IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| S.F. and E.F., <br><br> Plaintiffs, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY and SLALOM LLC, HEALTHCARE BENEFIT PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 1:22-cv-68-HCN <br><br> Howard C. Nielson, Jr. <br> United States District Judge |

The Plaintiffs, S.F. and E.F., sue the Defendants, Cigna Health and Life Insurance Company and the Slalom LLC, Healthcare Benefit Plan, asserting two claims under ERISA (the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*): (1) a claim for payment of improperly denied benefits, and (2) a claim for violations of the Mental Health Parity and Addiction Equity Act. All parties move for summary judgment. For the following reasons, the court grants the Defendants' motions in part and denies them in part, denies the Plaintiffs' motion, and remands the case to Cigna for further consideration of the Plaintiffs' claim for payment of improperly denied benefits.

I.

Cigna serves as the claims administrator for the Plan. *See* Dkt. No. 15 at 2 ¶ 2. S.F. was a participant in the Plan and E.F. was a beneficiary. *See id.* at 2 ¶ 3. Among other covered services, the Plan provides benefits for medically necessary mental-health services at residential treatment facilities. *See* AR 30, 33–34.

To be deemed medically necessary under the Plan, such residential treatment must be (1) "required to diagnose or treat an illness, Injury, disease or its symptoms;" (2) "in accordance with generally accepted standards of medical practice;" (3) "clinically appropriate in terms of

type, frequency, extent, site and duration;" (4) "not primarily for the convenience of the patient, Physician or other health care provider;" (5) "not more costly than an alternative service(s), medication(s) or supply(ies) that is at least as likely to produce equivalent therapeutic or diagnostic results with the same safety profile as to the prevention, evaluation, diagnosis or treatment of [a] Sickness, Injury, condition, disease or its symptoms; and" (6) "rendered in the least intensive setting that is appropriate for the delivery of the services, supplies or medication." AR 73.

The Plan further provides that "[i]n determining whether health care services . . . are Medically Necessary," Cigna "may rely on the clinical coverage policies" that it "maintain[s]." *Id.* Among these policies are Cigna's "Medical Necessity Criteria" for "Residential Mental Health Treatment for Children and Adolescents," which include both "Criteria for Admission" and "Criteria for Continued Stay." AR 233–34.

Six criteria must be satisfied for admission to residential treatment: (1) "All elements of Medical Necessity must be met" under the Plan; (2) "The child/adolescent has been diagnosed with a moderate-to-severe mental health disorder, per the most recent version of the Diagnostic and Statistical Manual of Mental Disorders and evidence of significant distress/impairment"; (3) "This impairment in function is seen across multiple settings such as; school, home, work, and in the community, and clearly demonstrates the need for 24 hour psychiatric and nursing monitoring and intervention"; (4) "As a result of the interventions provided at this level of care, the symptoms and/or behaviors that led to the admission can be reasonably expected to show improvement such that the individual will be capable of returning to the community and to a less restrictive level of care"; (5) "The child/adolescent is able to function with age-appropriate independence, participate in structured activities in a group environment, and both the individual

and family are willing to commit to active regular treatment participation"; and (6) "There is evidence that a less restrictive or intensive level of care is not likely to provide safe and effective treatment." AR 233.

To qualify for continued stay in residential treatment, an "individual [must] continue[] to meet all elements of Medical Necessity" under the Plan, as well as at least one of the following criteria: (1) "The treatment provided is leading to measurable clinical improvements in the moderate-to-severe symptoms and/or behaviors that led to this admission and a progression toward discharge from the present level of care, but the individual is not sufficiently stabilized so that he/she can be safely and effectively treated at a less restrictive level of care"; (2) "If the treatment plan implemented is not leading to measurable clinical improvements the moderate-to-severe symptoms and/or behaviors that led to this admission and a progression toward discharge from the present level of care, there must be ongoing reassessment and modifications to the treatment plan that address specific barriers to achieving improvement, when clinically indicated"; or (3) "The individual has developed new symptoms and/or behaviors that require this intensity of service for safe and effective treatment." AR 234. And all three of the following criteria must be satisfied: (1) "The child/adolescent and family are involved to the best of their ability in the treatment and discharge planning process"; (2) "Continued stay is not primarily for the purpose of providing a safe and structured environment"; and (3) "Continued stay is not primarily due to a lack of external supports." *Id.*

Beginning in February 2018, Dr. Hower Kwon, a psychiatrist, diagnosed E.F. "with major depression, ADHD, . . . and substance dependence." AR 769; *see also* AR 766. According to his general pediatrician, Dr. Kathy Risse, E.F. was admitted to an intensive care unit on September 28, 2019, "due to acute hypoxemic respiratory failure, ARDS, and myocarditis after"

3

the police "found him in his car" "with vaping paraphernalia and various opiates." AR 756. E.F.'s urine tested "positive for ethanol, benzodiazepines, amphetamines, cocaine, and THC," and a "pediatric psychiatry team" determined "that his behavior leading up to the hospitalization was a suicide attempt." AR 756–57. In October 2019, E.F. began receiving treatment for ADHD, an unspecified depressive disorder, and cannabis use disorder at Open Sky Wilderness Therapy, an outdoor behavioral healthcare program. *See* AR 957–58. After his discharge from Open Sky on January 1, 2020, E.F. was placed at Catalyst Residential Treatment Center on January 3, 2020. *See* AR 1045. Catalyst developed a treatment plan to address E.F.'s diagnoses for major depressive disorder, cannabis use disorder, and ADHD. *See id.*

On January 6, 2020, Cigna denied coverage under the Plan for E.F.'s treatment at Catalyst. In its denial letter, Cigna offered the following "clinical basis" for denial:

> Based upon the available information, your symptoms do not meet the Cigna Behavioral Medical Necessity Criteria for Residential Mental Health Treatment for Children and Adolescents for admission and continued stay from 01/06/2020 forward, as you are not reported to be voicing thoughts of harm to self or others. You are not reported to be exhibiting aggressive behavior or disordered thinking. There is no co-occurring severe functional impairment requiring 24-hour supervision. You are medically stable. You have a supportive family. Less restrictive levels of care are available to assist you to learn healthy coping skills, and for medication management.

AR 714. Cigna further informed E.F. of his right "to receive free of charge, copies of all documents, records and other information relevant to [an] appeal" of the benefits denial. AR 717.

E.F.'s parents appealed the denial. As part of their appeal, E.F.'s parents provided Cigna with five letters from medical professionals who had treated E.F. and an educational consultant who placed E.F. at Open Sky and Catalyst to demonstrate that E.F.'s treatment at Catalyst was medically necessary. *See* AR 722–23, 755–60, 768–69, 826–30. E.F.'s parents also provided Cigna with E.F.'s medical records from various previous treating providers, E.F.'s discharge summary and medical records from Open Sky, and E.F.'s medical records from Catalyst. *See* AR

4

724–54, 761–67, 770–82, 831–1074. And in their appeal letter, E.F.'s parents requested "a physical copy of any and all documentation related to both the initial determination and the level one appeal determination including the reviewer's name, credentials, experience, and case notes or report." AR 685.

Cigna affirmed the denial of benefits, offering the following justification in a denial letter dated July 31, 2020:

> Based upon the available clinical information received initially and with this appeal, your symptoms did not meet Behavioral Health Necessity Criteria for admission and continued stay at Residential Mental Health Treatment for Children and Adolescents level of care from 01/03/2020 – 01/03/2021. Though you had symptoms of anxiety and depression, and at times struggled with emotional regulation, you did not have impairments in functioning across multiple settings that clearly demonstrated a need for monitoring and intervention at a 24 hour Residential Mental Health Treatment level of care for your safe and effective treatment. You were in behavioral control, and had not recently demonstrated actions or made serious threats of harm to yourself or others as a result of a mental health disorder. Less restrictive levels of care were available for safe and effective treatment. Therefore, the initial determination is upheld.

AR 1202. Cigna again informed E.F. of his right "to receive free of charge, copies of all documents, records and other information relevant to [his] appeal for benefits," and further offered to provide "free copies of the medical necessity criteria, clinical guidelines, or other information used to make this decision." *Id.*

Having exhausted their administrative remedies, the Plaintiffs brought this suit. At a hearing on the parties' summary judgment motions, counsel for the Plaintiffs represented that the Defendants did not provide the Plaintiffs with the internal notes of Cigna's reviewers for either the initial denial or the appeal until after litigation commenced in this court. The Defendants did not dispute that representation.

## II.

When, as here, all parties to an ERISA case have "moved for summary judgment" on a denial-of-benefits claim "and stipulated that no trial is necessary, summary judgment is merely a vehicle for deciding" that claim; "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (cleaned up). The court reviews a denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

In this case, the Plan gives "Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan." AR 66. The court accordingly reviews Cigna's "denial of benefits under an arbitrary and capricious standard." *D.K. v. United Behav. Health*, 67 F.4th 1224, 1235 (10th Cir. 2023). Under this standard, the court must uphold Cigna's determination "so long as it was made on a reasoned basis and supported by substantial evidence." *Ian C. v. UnitedHealthcare Ins. Co.*, 87 F.4th 1207, 1219 (10th Cir. 2023) (cleaned up). But a claims administrator may abuse its discretion, and its denial of benefits may be arbitrary and capricious, if it violates "ERISA's claims-processing" mandates. *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1309 (10th Cir. 2023).

Plaintiffs' Parity Act claim, by contrast, does *not* turn on a "factual determination" to be based "solely on the administrative record." *LaAsmar*, 605 F.3d at 796 (cleaned up). In resolving

the parties' motions for summary judgment on this claim, the court accordingly applies the ordinary summary judgment standard under Federal Rule of Civil Procedure 56(a). *See H.A. v. Tufts Health Plan*, 2025 WL 754143, at \*12 (D. Utah Mar. 10, 2025). "[V]iew[ing] the evidence and mak[ing] all reasonable inferences in the light most favorable to the nonmoving party," *id.* (cleaned up), the court considers whether the moving party has shown that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

## III.

"ERISA imposes two broad statutory mandates on a claims administrator, like [Cigna], that denies a claim for benefits." *Robert D. v. Blue Cross of Cal.*, 713 F. Supp. 3d 1159, 1165 (D. Utah 2024). "First, the administrator must 'provide adequate notice in writing setting forth the specific reasons for the denial, written in a manner calculated to be understood by the participant.'" *Id.* (cleaned up) (quoting 29 U.S.C. § 1133(1)). "Second, the administrator must provide an internal appeals process affording 'a reasonable opportunity for a full and fair review' of the benefits denial." *Id.* (cleaned up) (quoting 29 U.S.C. § 1133(2)).

"The Department of Labor has promulgated regulations elaborating on these statutory mandates." *Id.* One of these regulations addresses the information that must be included in an administrator's initial denial letter. *See* 29 C.F.R. § 2560.503-1(g)(1). Under this regulation, the Plan must explain the "specific reason or reasons" for the denial and "[r]efer to the specific plan provisions on which the determination is based." *Id.* at (g)(1)(i)–(ii). And if the denial is "based on . . . medical necessity," the letter must also include "either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon

7

request." *Id.* at (g)(1)(v)(B). Another regulation provides that the same information must be included in adverse benefit determinations on review of initial benefits denials. *See id.* at (j). Further, to provide a full and fair review of an initial denial, the administrator must "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim." *Id.* at (h)(2)(iv). Both initially and on review, the administrator "must engage in reasonable, meaningful dialogue in [its] denials." *D.K.*, 67 F.4th at 1240 (cleaned up).

### A.

Cigna's initial denial letter did not include an adequate "explanation of the scientific or clinical judgment for the determination" that E.F.'s treatment was not medically necessary. 29 C.F.R. § 2560.503-1(g)(1)(v)(B). Cigna did state that its denial was based on its Medical Necessity Criteria for Residential Mental Health Treatment for Children and Adolescents. And it asserted both that "[t]here is no co-occurring severe functional impairment requiring 24-hour supervision" and that "[l]ess restrictive levels of care are available" for treatment, which correspond to two of those criteria. *Compare* AR 714, *with* AR 233. But in addition to reciting the standards that a claimant must satisfy to qualify for treatment, Cigna was required to apply those standards "to the claimant's medical circumstances." 29 C.F.R. § 2560.503-1(g)(1)(v)(B). Cigna was required to provide a nonconclusory "explanation" why those standards were not satisfied, with "any health conclusions . . . backed up with reasoning and citations to the record." *David P.*, 77 F.4th at 1312 (cleaned up).

Cigna did not provide *any* explanation, based on E.F.'s specific medical circumstances, for its conclusions that E.F. lacked a severe functional impairment requiring 24-hour supervision and that less restrictive levels of care were available. "These statements thus lacked any analysis, let alone a reasoned analysis." *D.K.*, 67 F.4th at 1242 (cleaned up). To be sure, Cigna included

8

other assertions regarding E.F.'s medical circumstances in its denial letter, such as that he was "not reported to be voicing thoughts of harm to self or others," was "not reported to be exhibiting aggressive behavior or disordered thinking," and was "medically stable." AR 714. But Cigna did not provide any reasoned analysis explaining how these assertions relate to Cigna's specific medical necessity criteria, let alone how they support its ultimate conclusion that E.F.'s treatment was not medically necessary. Nor did Cigna support these assertions with "citations to the record." *David P.*, 77 F.4th at 1312 (cleaned up). The court accordingly concludes that Cigna's initial denial letter was too "vague and unreasoned" to comply with ERISA's claims-processing requirements. *Id.* at 1314 n.16.

## B.

Cigna's decision upholding its initial benefits denial likewise lacked an adequate "explanation of the scientific or clinical judgment for the determination." 29 C.F.R. § 2560.503-1(j)(5)(ii). Cigna again invoked E.F.'s purported failure to satisfy two of its medical necessity criteria for residential treatment, stating that he "did not have impairments in functioning across multiple settings that clearly demonstrated a need for monitoring and intervention at a 24 hour Residential Mental Health Treatment level of care" and that "[l]ess restrictive levels of care were available for safe and effective treatment." AR 1202. But as with its initial denial letter, Cigna did not provide "any analysis, let alone a reasoned analysis," to support these statements. *D.K.*, 67 F.4th at 1242 (cleaned up). Cigna simply asserted that E.F. had failed to satisfy the two criteria, without "applying the terms of the [criteria] to [his] medical circumstances." 29 C.F.R. § 2560.503-1(j)(5)(ii).

Cigna further observed that E.F. "had symptoms of anxiety and depression" and "at times struggled with emotional regulation," but that he was "in behavioral control, and had not recently

demonstrated actions or made serious threats of harm to [himself] or others as a result of a mental health disorder." AR 1202. But Cigna did not support these "health conclusions" with *any* "citations to the record" on appeal. *D.K.*, 67 F.4th at 1242. Nor did Cigna offer any reasoned analysis explaining how these medical circumstances relate to the two criteria on which it expressly relied, let alone to its medical necessity criteria more generally. Given that the Plaintiffs "provided" Cigna "with extensive information" on appeal, Cigna's "conclusory response[] without citing the medical record[s] did not constitute a full and fair review." *Id.*

What is more, Cigna's letter upholding its denial of benefits does not so much as mention the five letters that E.F.'s parents submitted to support their argument that his treatment at Catalyst was medically necessary, including four letters from medical professionals who had treated him. While Cigna was "'not required to defer to' the medical opinions of a treating physician," it was at least "'required to engage with and address' those opinions." *Robert D.*, 713 F. Supp. 3d at 1165 (quoting *D.K.*, 67 F.4th at 1237). Because Cigna "refus[ed] to address the treating physician opinions presented to it which could have confirmed"—or at least supported—E.F.'s "need for benefits, [it] acted arbitrarily and capriciously." *D.K.*, 67 F.4th at 1241.

### C.

Cigna attempts to justify its denials by pointing to the internal notes of its reviewers, which, it argues, "reflect[] that" the reviewers "*did* consider all of the relevant evidence, including E.F.'s medical records." Dkt. No. 43 at 22. But the Tenth Circuit has made clear that "in light of the dialogue ERISA requires between the plan administrator and a claimant, a court reviewing an administrator's benefits decisions cannot consider reasons the administrator included in its internal notes when the administrator never conveyed those reasons to the claimant" "in a timely fashion *during* the interactive process." *David P.*, 77 F.4th at 1313, 1314

10

n.16 (emphasis added). Because Cigna did not convey its internal notes to the Plaintiffs before this litigation commenced, the court must consider "[o]nly the rationales articulated to the beneficiary in the denial letter." *Ian C.*, 87 F.4th at 1226.

To be sure, under the regulations, plan administrators who deny benefits based on medical necessity are permitted *either* to provide the scientific or clinical judgment for the determination in the denial letter itself *or* to offer, in that letter, to provide that judgment upon request, free-of-charge. *See* 29 C.F.R. § 2560.503-1(g)(1)(v)(B); *id.* at (j)(5)(ii). But Cigna does not appear to have made such an offer in either denial letter. Both denial letters did include a general offer to provide "free of charge, copies of all documents, records and other information relevant to your appeal for benefits, including the benefit provision, guideline or protocol upon which the decision was based." AR 717; *see also* AR 1202. And in the second letter, Cigna also offered to provide "free copies of the medical necessity criteria, clinical guidelines, or other information used to make this decision." AR 1202. Although Cigna thus offered to share the information that its reviewers *relied on* in making their decisions, it did not clearly offer to provide a reasoned explanation of *the decisions themselves*—that is, *the reviewers'* scientific or clinical judgment that residential treatment was not medically necessary for E.F. The denial letters do not include, for example, an express offer to provide "the narratives written by the physicians who have reviewed your case." *Robert D.*, 713 F. Supp. 3d at 1166 (cleaned up).

Further, although E.F.'s parents specifically requested in their appeal letter that Cigna provide its "case notes" to them, AR 685, Cigna did not disclose those "internal records and evidence" before litigation began, *Ian C.*, 87 F.4th at 1226 n.15. Even if Cigna's denial letters could be construed to include offers to provide internal notes, Cigna thus did not comply with the regulation because it did not "actually *send*[] those notes to Plaintiffs when asked." *Robert D.*,

11

713 F. Supp. 3d at 1167 (emphasis added). Because Cigna "withh[eld] those reasonings" from the Plaintiffs, it cannot rely on its internal notes to support its denials under Section 2560.503-1(g)(1)(v)(B) and (j)(5)(ii). *Id.* at 1167 n.7 (quoting *Ian C.*, 87 F.4th at 1226 n.15).

### D.

Because Cigna's initial denial and its decision on appeal did not comply with ERISA's claims-processing rules, the court "may either remand the case to" Cigna "for a renewed evaluation of the claimant's case or . . . order an award of benefits." *David P.*, 77 F.4th at 1315 (cleaned up). The former remedy "is appropriate if the administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision." *Id.* (cleaned up). The latter remedy is warranted only "if the evidence in the record clearly shows that the claimant is entitled to benefits," *id.* (cleaned up), or if the administrator committed "clear and repeated procedural errors," *D.K.*, 67 F.4th at 1244 (emphasis added).

In this case, there appears to be some evidence to support the conclusion that E.F.'s treatment at Catalyst was medically necessary. E.F.'s letters of medical necessity and medical records indicate that prior to his enrollment at Open Sky, he experienced significant impairments in function at school, at home, and in the community as a result of his depression. For example, Dr. Kwon recounted that E.F. "got into serious trouble after being caught with a large quantity of marijuana at school," and that his use of marijuana "appeared to be . . . an effort to self-medicate his symptoms of depression." AR 769. And there is evidence that E.F. was "acting out with volatility at home" and in the community by "abusing substances regularly" and "driving at dangerous and illegal speeds," resulting in his having "multiple interactions with the law." AR 828. Finally, given the severity of these impairments and E.F.'s "near fatal overdose," there is

evidence that residential treatment was necessary and that "less intensive modes of treatment" would not have sufficed. AR 769.

But the court "cannot say that there is *no* evidence in the record to support [Cigna's] decision, or that the evidence so clearly points the other way as to make a remand unnecessary." *David P.*, 77 F.4th 1315 n.17 (cleaned up; emphasis added). Because the letters of medical necessity were written primarily by medical professionals who treated E.F. *before* his admission to Open Sky, they may be "too remote in time to provide much insight into whether [he] still needed residential treatment when [he] ultimately sought admission to [Catalyst]." *Robert D.*, 713 F. Supp. 3d at 1171. And while E.F.'s letter of discharge from Open Sky recommended that he receive residential treatment at Catalyst, the letter also stated that E.F. "excelled in his time at Open Sky" and "made significant progress in addressing presenting issues and treatment goals." AR 956, 960. Soon after E.F. was placed at Catalyst, moreover, a Catalyst representative described him as having "appropriate and slightly anxious mood and appropriate affect," "fair insight and judgment," and "normal sleep and appetite." AR 1258. In addition, E.F.'s medical records at Catalyst indicate that he reported "that his depression has been well controlled on medications," and that he was "well groomed" with a "logical, linear, and coherent" "[t]hought process" and a "[e]uthymic" "[m]ood." *E.g.*, AR 1014.

The court thus concludes that the record "contains both evidence supporting Plaintiffs' claims for benefits and evidence supporting the denial of benefits." *David P.*, 77 F.4th at 1315 n.17.

Further, the record here contains nothing like the repeated, clear, and egregious procedural errors that justified an award of benefits in *D.K.* The court cannot conclude that Cigna's errors over the course of two denial letters and a single administrative appeal were

13

"repeated" when compared to the circumstances in *D.K.*, which involved five denial letters and four administrative appeals—or, as the Tenth Circuit put it, "a *series* of denials, appeals for reconsideration, and requests for more information." 67 F.4th at 1234–35 (emphasis added).

Nor can the court say that Cigna's errors were "clear," given the state of Tenth Circuit precedent when Cigna issued the denial letters. At those times, the Tenth Circuit had not yet clarified what many thought previously uncertain in the Tenth Circuit: whether the rule that a reviewing court may "consider only the rationale asserted by the plan administrator in the administrative *record*," *e.g.*, *Peterson v. Sun Life Assur. Co. of Can.*, 474 F. App'x 725, 728 n.6 (10th Cir. 2012) (emphasis added); *accord Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008), limited the court to what is stated in the denial letters, or whether the court could look to other portions of the administrative record as well. Further, the Tenth Circuit's decisions in *D.K.*, *David P.*, and *Ian C.*—which postdated Cigna's denial letters—required that the rationale for denying benefits be communicated in considerably more detail than some had thought required under the Tenth Circuit's previous guidance that denial letters need not provide "the reasoning behind the reasons" for a denial. *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190–92 (10th Cir. 2007) (cleaned up), *overruled in part on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116–17 (2008).

Given all this, the court concludes that "[a] remand to [Cigna] is . . . appropriate." *David P.*, 77 F.4th at 1315 n.17.[1]

---

[1] "The scope of the remand will, of course, be subject to the limits imposed by Tenth Circuit precedent." *Robert D.*, 713 F. Supp. 3d at 1171 n.10 (citing *David P.*, 77 F.4th at 1315–16).

## IV.

Finally, the court addresses the Plaintiffs' Parity Act claim. The Parity Act requires that "treatment limitations applicable to . . . mental health or substance use disorder benefits" be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). In addition, a plan may not have "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." *Id.*

Plaintiffs seeking to make out a Parity Act claim must (1) "plausibly allege that the relevant group health plan is subject to [the Act]," (2) "identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan," (3) "identify medical or surgical care covered by the plan that is analogous to the mental health or substance-use disorder care for which the plaintiffs seek benefits," and (4) "plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to the medical or surgical analog." *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1283 (10th Cir. 2023). "Disparate treatment limitations that violate the Parity Act can be either *facial* (as written in the language or the processes of the plan) or *as-applied* (in operation via application of the plan)." *Brian J. v. United Healthcare Ins. Co.*, 667 F. Supp. 3d 1124, 1135 (D. Utah 2023) (cleaned up).

The Plaintiffs assert only an as-applied challenge. *See* Dkt. No. 50 at 30 ("Defendants['] arguments that they do not facially violate MHPAEA are immaterial because Plaintiffs allege an as applied challenge."). Specifically, the Plaintiffs argue that Cigna require a showing of "acute symptomology" for mental-health or substance-abuse care at a residential treatment center to be deemed medically necessary, but do not require such symptomology for medical or surgical

treatment "at a skilled nursing [facility] or physical rehabilitation center" to be deemed medically necessary. *See id.* at 33.

"It is well settled that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *AH Aero Servs., LLC v. Heber City*, 601 F. Supp. 3d 1157, 1197 n.18 (D. Utah 2022) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Plaintiffs have failed, however, to identify *any* evidence of how Cigna evaluates claims for analogous inpatient medical or surgical treatment in practice, let alone evidence showing whether Cigna typically requires "acute symtomology" for such treatment to be deemed medically necessary. Nor have the Plaintiffs provided any evidence, apart from E.F.'s own experience, of how Cigna evaluates claims for mental health care at residential treatment centers in practice. "Absent such evidence, Plaintiffs' as-applied challenge necessarily fails." *Anne M. v. United Behav. Health*, 2022 WL 3576275, at *11 (D. Utah Aug. 19, 2022).[2]

---

[2] The Plaintiffs also appear to argue that Cigna violated the Parity Act because it applies *both* the Plan's definition of "medical necessity" *and* an additional set of internal guidelines to determine whether residential mental health treatment is medically necessary but applies *only* the Plan's definition in evaluating claims for analogous treatment at skilled nursing facilities or inpatient rehabilitation centers. *See* Dkt. No. 50 at 34. But the Plaintiffs did not allege a Parity Act violation on this ground in their complaint. "Although Tenth Circuit precedent permits the court to 'interpret the inclusions of new allegations in a response to a motion for summary judgment, as a potential request to amend the complaint,' the deadline for such amendments has long passed," and the Plaintiffs have not "provided" a good "excuse" for their "delay in asserting these additional allegations." *AH Aero Servs., LLC v. Heber City*, 601 F. Supp. 3d 1157, 1197 n.18 (D. Utah 2022) (cleaned up) (quoting *Adams v. C3 Pipeline Constr. Inc.*, 17 F.4th 40, 68 (10th Cir. 2021)). At the hearing on the summary judgment motions, counsel for the Plaintiffs stated that he could not have included these allegations in the complaint because he was not aware that Cigna lacked internal medical necessity guidelines for inpatient medical or surgical treatment until he received Cigna's responses to the Plaintiffs' interrogatories. But the Plaintiffs appear to have received those responses *before* the scheduling order's deadline for filing a

\*   \*   \*

For the foregoing reasons, the court **GRANTS** the Defendants' motions for summary judgment with respect to the Plaintiffs' Parity Act claim and **DENIES** the motions with respect to the Plaintiffs' claim for payment of improperly denied benefits. The court **DENIES** the Plaintiffs' motion for summary judgment. The court remands the Plaintiffs' claim for payment of improperly denied benefits to Cigna for reconsideration in accordance with this decision.

**IT IS SO ORDERED**.

Dated this 19th day of August, 2025.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

---

motion to amend the pleadings. *Compare* Dkt. No. 50-1 at 11, *with* Dkt. No. 18 at 3. "The court accordingly declines to consider th[is] asserted" disparity as a basis for the Plaintiffs' Parity Act claim. *Id.*

Finally, the Plaintiffs alleged in their complaint that Cigna's requirement that E.F. "clearly demonstrate[]" a need for residential mental health treatment "reveals a significant disparity concerning the documentation required for approval and payment of mental health services versus what is required to obtain approval and payment of comparable medical and surgical services." Dkt. No. 2 at 14–15 ¶ 56. But in their summary judgment briefing, the Plaintiffs did not argue that Cigna had violated the Parity Act based on this allegation. The Plaintiffs accordingly have waived any such argument, and the court declines to consider whether Cigna violated the Parity Act on that basis. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (declining to consider arguments that had not "been adequately briefed for [the court's] review").